# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL WALTER,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>    Defendant. | No. EDCV 10-391 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Darrell Walter ("Walter") filed a Complaint on March 23, 2010. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on April 7 and 9, 2010. (Dkt. Nos. 8, 9.) On November 23, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///
///
///
///
///

# I.

## PROCEDURAL BACKGROUND

On January 26, 2006, Walter filed an application for disability insurance benefits. Administrative Record ("AR") 55. On April 3, 2006, Walter filed an application for supplemental security income. AR 54. In both applications, he alleged a disability onset date of November 15, 2005. AR 8. The applications were denied initially and upon reconsideration. *Id.* Walter requested a hearing before an Administrative Law Judge ("ALJ"). AR 72. At the hearing on February 14, 2008, the ALJ continued the hearing to allow Walter to complete drug rehabilitation, to be consistently sober for six months, and to obtain a post-rehabilitation psychological assessment. AR 23-29. At the supplemental hearing on November 18, 2008, the ALJ continued the hearing to allow Walter to receive outstanding medical records. AR 30-36. On February 10, 2009, the ALJ conducted the second supplemental hearing at which Walter, a medical expert and a vocational expert ("VE") testified. AR 37-53. On March 23, 2009, the ALJ issued a decision denying benefits. AR 5-19. On January 22, 2010, the Appeals Council denied Walter's request for review. AR 1-3. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse

as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A.   Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.   The ALJ's Findings

The ALJ found that Walter has the severe impairment of depressive disorder, not otherwise specified. AR 10. He has the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: moderately complex tasks consisting of 4-5 steps; object oriented tasks; habituated tasks; no intense interaction with co-workers, supervisors, and the general public; no responsibility for the safety of others; no work at heights, with hazardous machinery, or hazardous conditions; and no fast-paced work." AR 11. He is capable of performing his past relevant work as a maintenance person, cook, and ice maker. AR 18. The ALJ concluded that Walter is not disabled. AR 19.

### C.   Development of the Record

Walter contends the ALJ erred by not fully and fairly developing the record regarding Ms. Rooney. JS 3-6. Specifically, Walter argues that the ALJ should have attempted to obtain Ms. Rooney's treatment notes and clarification regarding her credentials. *Id.*

It is the claimant's duty to prove he or she is disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *see* 42 U.S.C. § 423(d)(5)(A) (claimant must furnish medical and other evidence of his disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). The duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests. *Id.* "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60. This principle does not, however, allow a claimant to shift his own burden of proving disability to the ALJ. *Id.* at 459.

On April 17, 2006, Ms. Rooney completed a Third Party Function Report in which she identified herself as Walter's therapist and included her address. AR 193-200. Walter's Disability Report nowhere mentions Ms. Rooney but states he regularly sees Dr. Khin at the same address. AR 189. The medical provider at this address is San Bernardino County Department of Behavioral Health ("Department").

The ALJ requested the medical records from the Department at this address. AR 313. The Department provided records from February 7, 2006 through November 14, 2006. AR 314-34. The records include treatment notes from Dr. Khin and others. Only the first record, dated February 7, 2006, contains Ms. Rooney's notes and identifies her as a "clinician." AR 327. Dr. Khin is listed on that page as the "person authorized to diagnose (if clinician is not so authorized)." *Id.* Dr. Khin diagnosed polysubstance dependence and major depressive disorder. *Id.* At the second hearing that was continued for receipt of additional medical records, Walter's counsel did not identify Ms. Rooney as a provider whose records were missing. AR 33. Counsel subsequently

4

submitted additional records from the Department and others, but none for Ms. Rooney. AR 243-245.

Ms. Rooney's Third Party Function Report stated that she held weekly sessions with Walter for two years. AR 193. Walter has "poor social skills" and "responds to inner stimuli." AR 198. He experiences "isolation, paranoia, suicidal ideations [and] command hallucinations." *Id.* Ms. Rooney further remarked that Walter is "unable to remain employable at this time due to instability." AR 200.

The ALJ concluded that "Ms. Rooney's answers and opinions are not entitled to significant weight." AR 18. The ALJ found no evidence that Walter suffered from all of the symptoms Ms. Rooney reported. "Any evidence of true hallucinations has been present only when the claimant has been abusing methamphetamine." *Id.* Ms. Rooney's report covered a time frame when Walter was still abusing or had recently abused drugs.[1] *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3) (a factor to be considered in evaluating third-party statements is their consistency with the objective medical evidence and the record); 416.929(c)(3) (same); 20 C.F.R. §§ 404.1527(e)(1) (a statement by a medical source that a claimant is "unable to work" is an opinion on an issue reserved to the Commissioner). The ALJ also noted there are no treatment notes from Ms. Rooney, and "it is unknown whether [Ms. Rooney's] title is self-appointed or whether she is a licensed, credentialed therapist, or an acceptable medical source." AR 18.

As discussed above, the ALJ satisfied his obligation to develop the record and did not err. The ALJ did not find that the record was ambiguous or inadequate to allow for the proper evaluation of the evidence. Nor did any physician render an opinion that the record was ambiguous or inadequate. *See Tonapetyan*, 242 F.3d at 1150 (duty to develop record existed when ALJ relied on physician who expressed that more medical evidence was needed to state a diagnostic opinion).

---

[1] *See* 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.").

**D.     Treating Physician**

Walter argues that the ALJ failed to consider the mental status examination ("MSE") conducted by Dr. Khin, Walter's treating psychiatrist, on February 14, 2006, and failed to expressly state whether he accepted or rejected Dr. Khin's findings. Alternatively, Walter argues the ALJ did not cite evidence of his use of drugs during that time.  JS 10-11.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* at 632 (citations and quotations omitted).  When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) length of the treatment relationship and frequency of examination;[2] (2) nature and extent of the treatment relationship;[3] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion.  *See id.* at 631; 20 C.F.R. § 404.1527(d)(1)-(6).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas*, 278 F.3d at 956-57 (citation and quotation marks omitted).

---

[2] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[3] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

The ALJ properly considered Dr. Khin's opinions, including the MSE that Walter claims he ignored. AR 14, 16; JS 10-11. The ALJ noted that on February 14, 2006, while Walter was undergoing drug rehabilitation, Dr. Khin diagnosed Walter with a major depressive disorder, polysubstance dependence, and assessed a Global Assessment of Functioning ("GAF") of 45.[4] AR 14, 333. Dr. Khin recommended that Walter continue with the drug treatment program. AR 14, 334.

Although the ALJ did not state expressly that he accepted Dr. Khin's opinions, the ALJ cited Dr. Khin's treatment notes when discussing medical evidence that supported the conclusion that Walter can engage in a wide range of work-related activities. AR 16, 320-33. The ALJ noted that Dr. Khin reported Walter "did not give full effort while undergoing drug rehabilitation at Cedar House; that claimant had been seen laughing and joking when he thought he was not being observed by staff members; the claimant's description of his purported hallucinations were not indicative of true hallucinations and were more reflective of something observed in a movie." AR 16, 322-23. "Dr. Khin thought [Walter] was malingering and more intent on collecting disability benefits." AR 16, 322-23. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1981) (although ALJ did not expressly state whether he accepted or rejected a physician's opinion, "our cases do not require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

Contrary to Walter's contention, the ALJ did cite evidence to support Walter's use of drugs or recent discontinuance of drugs during the time of Dr. Khin's February 14, 2006 assessment. AR 17. The ALJ cited a January 30, 2006 psychiatric evaluation by a doctor at Arrowhead Regional Medical Center. AR 13, 17, 273-75. The evaluation states that Walter used heroin approximately two and a half months prior, used marijuana approximately three weeks prior, and used methamphetamines two weeks

---

[4] A GAF is not determinative of mental disability for Social Security purposes. *See* 65 Fed. Reg. 50,746, 50,765 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings.").

prior. AR 273-74. Walter had a history of alcohol abuse and drinks every other night. AR 273. Further, the ALJ noted that at the time of Dr. Khin's February 14, 2006 assessment, Dr. Khin diagnosed polysubstance dependence and Walter was undergoing drug rehabilitation at Cedar House.[5] AR 14. In addition, the ALJ cited evidence that indicated Walter did not take the rehabilitation program seriously after Dr. Khin's February 14, 2006 assessment and tested positive for amphetamines in May 2006. AR 14-17, 334, 359-60, 405.

The ALJ properly considered Dr. Khin's psychiatric opinions and did not err.

### E.     **Hypothetical**

Walter argues that the ALJ erred because his hypothetical to the VE omitted Walter's "medication side effects of sleepiness and dizziness" and "auditory hallucinations." JS 14.

An ALJ may rely on testimony a VE gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

The ALJ found that the evidence did not establish that Walter experienced limitations from his alleged hallucinations. The ALJ noted that according to Dr. Khin, Walter's purported hallucinations were not indicative of true hallucinations and were more akin to something observed in a movie. AR 16, 17, 322. The ALJ further noted that Dr. Khin suspected Walter of malingering. AR 14, 322. In addition, the ALJ noted that Dr. Smith, who conducted a psychiatric consultative examination of Walter, reported that there was no evidence of the purported hallucinations and that Walter appeared to exaggerate and embellish his symptoms during the interview. AR 14, 16, 301-10.

---

[5] Walter was discharged from the San Bernardino Behavioral Health Center to Cedar House in February 2006. AR 13, 278.

Similarly, Dr. Cash, who conducted a psychological consultative examination of Walter, questioned Walter's veracity and found no real evidence of psychosis or a thought disorder. AR 15, 373-77.

The ALJ also found that the evidence did not establish that Walter experienced limitations from his alleged medication side effects. The ALJ noted that on February 14, 2007, Walter denied medication side effects. AR 15, 390. The ALJ also noted that in June 2008, the attending psychiatrist reported that Walter had not been taking his medications for several months. AR 15, 389. Although Dr. Khin noted some medication side effects on February 14, 2006, he later questioned Walter's symptoms and suspected malingering. AR 14-15, 322, 333-34. *See Osenbrock*, 240 F.3d at 1164 ("[P]assing mentions of the side effects of [the claimant's] medication in some of the medical records" did not establish "evidence of side effects severe enough to interfere with [the claimant's] ability to work."); *see also Thomas*, 278 F.3d at 960 (ALJ properly rejected claimant's assertion that pain medication affected concentration or caused dizziness because "[t]he only evidence regarding [side effects were the claimant's] own statements to her doctor and her testimony at the hearing").

The ALJ is not required to include limitations in a hypothetical that are not in his findings and did not err.

### F.    Effects of Walter's Medication

Walter argues the ALJ erred because "there is no indication the ALJ considered and evaluated [Walter's] medication and the related side effects as noted in Dr. Khin's treatment notes." JS 19.

The Ninth Circuit has recognized that medication side effects can "significantly impact" a person's ability to work and should be considered in disability determinations. *Osenbrock*, 240 F.3d at 1169. An ALJ must consider medication and its side effects as

part of his consideration of a claimant's subjective pain testimony. Social Security Ruling 96-7p.[6]

Contrary to Walter's contention, the ALJ did consider and evaluate Walter's medication and the related side effects. *See supra*, Section III.E. In addition, the ALJ found that Walter generally lacked credibility and noted repeated examples of Walter being uncooperative, giving poor effort and being suspected of malingering. AR 14, 16, 301, 307, 309, 322-23, 376. The ALJ did not err.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 30, 2011

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

---

[6] Social security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations" and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).